CRENSHAW, Judge.
 

 In this consolidated appeal, the former wife, Amanda J. Smith, challenges the trial court’s final judgment of dissolution of marriage and a subsequent order partially granting and partially denying her motion for rehearing. Mrs. Smith and her former husband, Richard A. Smith, were married in November 2003. Two children were born of the marriage. However, in November 2008 Mr. Smith filed a petition for dissolution of marriage contending that the marriage was irretrievably broken. The trial court conducted two days of dissolution proceedings in September 2009, and after the proceedings concluded, entered its final judgment. -, Unfortunately, no court reporter was in attendance at the dissolution proceedings, and thus there is no transcript for this court to review. Nonetheless, we find the face of the record establishes the trial court erred in its calculations of equitable distribution and Mrs. Smith’s child support payments, and therefore we reverse and remand for further proceedings to correct these errors. We affirm the final judgment and order of rehearing as to Mrs. Smith’s remaining arguments.
 

 When there is no trial transcript in our appellate record, we “can not [sic] properly resolve the underlying factual issues so as to conclude that the trial court’s judgment is not supported by the evidence or by an alternative theory.”
 
 Applegate v. Barnett Bank of Tallahassee,
 
 377 So.2d 1150, 1152 (Fla.1979). And because we do not know the factual context of the trial court’s decision, we cannot “reasonably conclude that the trial judge so misconceived the law as to require reversal.”
 
 Id.
 
 Nonetheless, “even where the appellant fails to provide a transcript, the absence of a transcript does not preclude reversal where an error of law is apparent on the face of the judgment.”
 
 Chirino v. Chirino,
 
 710 So.2d 696, 697 (Fla. 2d DCA 1998).
 

 Here, it is clear from the face of the final judgment that the trial court intended an equal distribution of the parties’ assets and liabilities. Yet the equitable distribution chart that the trial court relied upon in its determination, labeled Exhibit “D,” shows an unequal distribution between the parties. This unequal distribution, caused by a mathematical error in the chart, is an error that is apparent even in the absence of a transcript and must be corrected by the trial court. Therefore, we reverse and remand for further proceedings to address this error.
 
 See Soto v. Soto,
 
 974 So.2d 403, 404 (Fla. 2d DCA
 
 *460
 
 2007) (noting mathematical errors apparent from the face of the final judgment necessitated a reversal despite the absence of a hearing transcript).
 

 It is also apparent from the face of the final judgment that the trial court erred in calculating Mrs. Smith’s child support payments due to a miscalculation of her gross annual income. Mrs. Smith brought this issue to the trial court’s attention in her motion for rehearing, which the trial court granted for the limited purpose of recalculating her child support payments. Specifically, the trial court directed that the child support be recalculated upon Mr. Smith’s submission of Amended Schedule “A.” However, there is nothing in the record establishing that this amended schedule had been filed or that the child support had been corrected. Thus we direct the trial court to address this error on remand as well.
 
 See, e.g., Hudson-McCann v. McCann,
 
 8 So.3d 1228, 1230 (Fla. 5th DCA 2009) (finding that an error regarding a spouse’s income “requires the trial court to revisit and recalculate the child support to be awarded”).
 

 Finally, Mrs. Smith contends that the trial court did not properly consider the best-interest factors enumerated under section 61.13(3), Florida Statutes (2008), when it determined the parties’ parenting plan and time-sharing schedule. Near the end of the marriage, Mrs. Smith had engaged in a relationship with a longtime friend and moved out of the marital home. It seems that Mrs. Smith’s conduct and the nature of her affair troubled the trial court. Though the trial court repeatedly stated in the final judgment of dissolution that “the nature of the relationship [was] completely irrelevant” in its examination of the best interests of the children, the trial court went into great detail outlining the history of the relationship between Mrs. Smith and her paramour and made several offhand remarks in reference to Mrs. Smith’s decision to leave Mr. Smith throughout the final judgment.
 
 [1]
 
 The trial court found, without a detailed discussion, that of the twenty best-interest factors listed under section 61.13(3), three factors were inapplicable, one factor favored Mrs. Smith, six factors favored Mr. Smith, including the “moral fitness” component under subsection (f), and the rest did not favor either parent. The trial court then used these findings as its basis for enacting the parenting plan and time-sharing schedule.
 

 “[A] trial court’s custody determination is reviewed for an abuse of discretion, and such a determination generally should be reversed only when no reasonable person would take the view adopted by the trial court.”
 
 Burnett v. Burnett,
 
 995 So.2d 519, 524 (Fla. 2d DCA 2008). For the trial court to consider a parent’s conduct as a basis for determining custody, the conduct in question “must have a direct effect or impact upon the children,” and “[t]he connection between the conduct and the harm to the children must have an evidentiary basis.”
 
 Jacoby v. Jacoby,
 
 763 So.2d 410, 413 (Fla. 2d DCA 2000) (citing
 
 Maradie v. Maradie,
 
 680 So.2d 538 (Fla. 1st DCA 1996));
 
 *461
 

 see also Willis v. Willis,
 
 818 So.2d 530, 533 (Fla. 2d DCA 2002). Further, when a parent’s alleged adultery is at issue, as in the case here, the act of adultery should not be taken into consideration in determining custody if the trial court finds that the spouse’s adultery does not have any bearing on the children’s welfare.
 
 See Dinkel v. Dinkel,
 
 322 So.2d 22, 24 (Fla.1975);
 
 Willis,
 
 818 So.2d at 533.
 

 It appears from the final judgment that the trial court unduly focused on Mrs. Smith’s alleged indiscretions in its analysis of the best-interest factors under section 61.13(3), particularly the morality factor in subsection (f). Yet the trial court failed to substantiate its findings with any evidentiary basis on how Mrs. Smith’s conduct directly impacted her children’s welfare. However, unlike our above determinations concerning the trial court’s errors calculating the equitable distribution of the parties’ marital assets and Mrs. Smith’s child support payments, both of which were apparent from the judgment itself, Mrs. Smith’s custody argument requires us to examine the factual context of the trial court’s decision. Because we are unable to conduct a meaningful review in the absence of a transcript, we are unable to determine from the face of the judgment that the trial court abused its discretion when it decided on the parties’ parenting plan and time-sharing schedule. Accordingly, we must affirm this portion of the trial court’s final judgment.
 

 Reversed in part, affirmed in part, and remanded with directions.
 

 SILBERMAN and VILLANTI, JJ., Concur.
 

 [1]
 

 . We note the following comment by the trial court with particular interest:
 

 The wife’s conduct in this regard suggests a degree of self-centeredness, a focus more on her desires and wishes than on the sanctity of the family unit and the welfare of the children. This suspicion is confirmed in the court's mind by the fact that Mrs. Smith, for no apparent reason other than she was unhappy and unfulfilled, decided to leave the family. There is no evidence at all that the husband has been abusive, has a drug or alcohol problem, or has engaged in behavior which would have provided some justification for the wife's decision.